FILED
CLERK
11:48 am, May 03, 2019
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X
JOSEPH STEVEN GROGAN,

                    Plaintiff,

     -against-

NANCY A. BERRYHILL,
Acting Commissioner of Social
Security,

                  Defendant.
---------------------------------------------------------X

MEMORANDUM OF
DECISION & ORDER
2:16-cv-01147 (ADS)

**APPEARANCES:**

**Goldsmith & Tortora**
*Attorneys for the Plaintiff*
2067 Jericho Turnpike
Commack, NY 11725
     By:    Craig Joseph Tortora, Esq., Of Counsel.,

**United States Attorney's Office**
*Attorneys for the Defendant*
610 Federal Plaza
Central Islip, NY 11722
     By:    Mary M. Dickman, Assistant United States Attorney,
                Robert W. Schumacher, II, Assistant United States Attorney, Of Counsel.

**SPATT, District Judge**:

On March 8, 2016, plaintiff Joseph Steven Grogan (the "Plaintiff" or "Grogan") commenced this appeal pursuant to the Social Security Act, 42 U.S.C. § 405 *et seq.* (the "Act"), challenging a final determination by the Defendant, Nancy A. Berryhill, the Acting Commissioner of the Social Security Administration (the "Defendant" or the "Commissioner"), that he is ineligible to receive disability insurance benefits.

1

Presently before the Court are the parties' cross motions, pursuant to Federal Rule of Civil Procedure ("FED. R. CIV. P." or "Rule") 12(c) for a judgment on the pleadings. For the reasons that follow, the Court denies the Plaintiff's motion and grants the Commissioner's motion.

## I. BACKGROUND

The Plaintiff is a 50-year-old man with a college education who worked as a police officer from 1989 to April 2013, including seven years as a detective in the years preceding his retirement.

On August 30, 2013, the Plaintiff filed a claim for disability insurance benefits alleging he became unable to work on April 29, 2013 due to: displacement of the lumbar disc without myelopathy; lumbago; degenerative disc disease of the lumbar spine; lumbar/thoracic radiculitis/neuritis; and L4-L5 discectomy. This application was denied and the Plaintiff requested an administrative hearing.

On April 7, 2015, the Plaintiff appeared with counsel and testified at a hearing before administrative law judge Jacqueline Haber Lamkay (the "ALJ").

On May 12, 2015, the ALJ issued a decision finding the Plaintiff was not disabled, which became the Commissioner's final decision when the Appeals Council denied the Plaintiff's request for review.

On March 8, 2016, the Plaintiff filed the instant action. On October 18, 2016, the Plaintiff moved for judgment on the pleadings, to which the Commissioner opposed and cross-moved on February 17, 2017.

For purposes of these motions, familiarity with the underlying administrative record is presumed. The Court's discussion of the evidence will be limited to the specific challenges and responses presently raised by the Plaintiff and the Defendant. In this regard, references to the record are denoted as "R."

## II. DISCUSSION

**A. THE STANDARD FOR BENEFITS UNDER THE ACT.**

The Act defines the term "disability" to mean an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A person may only be disabled if his "impairments are of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

In determining whether a person is disabled, the Commissioner is required to apply the five-step sequential process promulgated by the Social Security Administration, set forth in 20 C.F.R. § 404.1520. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999). The Plaintiff bears the burden of proving the first four steps, but then the burden shifts to the Commissioner at the fifth step to prove that the Plaintiff is capable of working. *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009); *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008); *Rosa*, 168 F.3d at 77; *see also Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996) ("If the claimant satisfies her burden of proving the requirements in the first four steps, the burden then shifts to the [Commissioner] to prove in the fifth step that the claimant is capable of working."). "If at any step a finding of disability or non-disability can be made, the [Social Security Administration] will not review the claim further." *Barnhart v. Thomas*, 540 U.S. 20, 24, 124 S. Ct. 376, 379, 157 L.Ed. 2d 333 (2003).

Under the five-step sequential evaluation process, the decision-maker decides:

(1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity"

assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014); *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996); *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); 20 C.F.R. §§ 404.1520, 416.920. When conducting this analysis, the ALJ must consider the objective medical facts; the diagnoses or medical opinions based on these facts; the subjective evidence of pain and disability; as well as the plaintiff's age, background, education and work experience. *Mongeur v. Heckler*, 722 F.2d 1033, 1037 (2d Cir. 1983) (per curiam).

**B. THE STANDARD OF REVIEW.**

"Judicial review of the denial of disability benefits is narrow" and "[t]he Court will set aside the Commissioner's conclusions only if they are not supported by substantial evidence in the record as a whole or are based on an erroneous legal standard." *Koffsky v. Apfel*, 26 F. Supp. 2d 475, 478 (E.D.N.Y. 1998) (Spatt, J.) (citing *Bubnis v. Apfel*, 150 F.3d 177, 179–81 (2d Cir. 1998)); *accord Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002) (citing *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000)); 42 U.S.C. § 504(g); *see also Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) ("Where there is substantial evidence to support either position, the determination is one to be made by the factfinder."). The ALJ is required to set forth those crucial factors used to justify his or her findings with sufficient particularity to allow the district court to make a determination regarding the existence of substantial evidence. *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

Accordingly, "the reviewing court does not decide the case de novo." *Pereira v. Astrue*, 279 F.R.D. 201, 205 (E.D.N.Y. 2010) (citing *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004)). Rather, "the findings of the Commissioner as to any fact, if supported by substantial

evidence, are conclusive," *id.* (citing 42 U.S.C. § 405(g)), and therefore, the relevant question is not "whether there is substantial evidence supporting the [plaintiff's] view"; instead, the Court "must decide whether substantial evidence supports *the ALJ's decision.*" *Bonet v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013) (emphasis in original). In this way, the "substantial evidence" standard is "very deferential" to the Commissioner, and allows courts to reject the ALJ's findings "'only if a reasonable factfinder would have to conclude otherwise.'" *Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (quoting *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir. 1994) (emphasis in original)). This deferential standard applies not only to factual determinations, but also to "inferences and conclusions drawn from such facts." *Pena v. Barnhart*, No. 01-cv-502, 2002 WL 31487903, at *7 (S.D.N.Y. Oct. 29, 2002) (*citing Levine v. Gardner*, 360 F.2d 727, 730 (2d Cir. 1966)).

"Substantial evidence means 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Burgess v. Astrue*, 537 F.3d 117, 127–28 (2d Cir. 2008) (quoting *Halloran*, 362 F.3d at 31); *accord Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L.Ed. 2d 842 (1971); *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 71 S. Ct. 456, 464, 95 L.Ed. 456 (1951)).

An ALJ's findings may properly rest on substantial evidence even where he or she fails to "recite every piece of evidence that contributed to the decision, so long as the record 'permits [the Court] to glean the rationale of an ALJ's decision.'" *Cichocki v. Astrue*, 729 F.3d 172, 178 n.3 (2d

5

Cir. 2013) (per curiam) (quoting *Mongeur*, 722 F.2d at 1040). This remains true "even if contrary evidence exists." *Mackey v. Barnhart*, 306 F. Supp. 2d 337, 340 (E.D.N.Y. 2004) (*citing DeChirico v. Callahan*, 134 F.3d 1177, 1182 (2d Cir. 1998)).

The Court is prohibited from substituting its own judgment for that of the Commissioner, even if it might understandably have reached a different result upon a de novo review. *See Koffsky*, 26 F. Supp. at 478 (quoting *Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir. 1991)); *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

**C. APPLICATION TO THE FACTS OF THIS CASE.**

The ALJ found that the Plaintiff had severe impairments of degenerative disc disease of the lumber spine and status post discectomy, but that he had the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. § 404.1567(a), except that he: could never climb ladders, ropes, or scaffolds; could occasionally climb ramps or stairs, balance, stoop, kneel, crouch, and crawl; must avoid concentrated exposure to wetness or humidity, and hazards such as dangerous moving machinery and unprotected heights; and must have the opportunity for a brief one to two minute change of position every 30 minutes. At step four, the ALJ found that the Plaintiff could not perform his past relevant work. At step five, the ALJ determined that, given the Plaintiff's RFC and vocational profile (age, education, and work experience), jobs existed in significant numbers in the national economy that he could perform. Accordingly, the ALJ found the Plaintiff was not disabled during the relevant period.

The Plaintiff contends that the ALJ erred by failing to (1) properly weigh the medical testimony introduced at the proceeding; (2) assess the credibility of his testimony; and (3) conduct a proper analysis at step five.

**1. As to the ALJ's Weighing of the Medical Testimony.**

The regulations define RFC as "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. Part 404 Subpt. P App. 2, § 200.00(c); see also 20 C.F.R. § 404.1545(a); 20 C.F.R. § 416.967; *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (defining RFC as the "maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis" (quoting SSR 96–8p)). This determination requires consideration of "a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis." *Pardee v. Astrue*, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (quoting 20 C.F.R. § 404.1545(a)). It takes into account "all the relevant evidence, including medical opinions and facts, physical and mental abilities, non-severe impairments, and Plaintiff's subjective evidence of symptoms." *Stanton v. Astrue*, No. 07-cv-0803, 2009 WL 1940539, at *9 (N.D.N.Y. July 6, 2009) (citing 20 C.F.R. § 404.1545).

At the fifth step, the Commissioner considers whether the claimant's RFC, along with other vocational factors, permits the claimant to perform any work other than the claimant's past relevant work. 20 C.F.R. § 404.1520(g). In fashioning the claimant's RFC, the treating physician rule requires the ALJ to give the opinion of a claimant's treating physician as to the nature and severity of the claimant's impairments "'controlling weight,'" so long as it is "'well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" *Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003) (quoting 20 C.F.R. § 404.1527(d)(2)); *Bonneau v. Astrue*, No. 5:13-cv-26, 2014 WL 31301, at *5 (D. Vt. Jan. 3, 2014) (same). Although the Court is generally required to defer to the medical opinion of a treating physician, *see Schisler v. Sullivan*, 3 F.3d 563, 567-68 (2d Cir. 1993), those

findings may not be accorded controlling weight if they are inconsistent with other substantial evidence, including the opinions of other medical experts. *Burgess*, 537 F.3d at 128.

The ALJ must consider the following factors if it decides to afford less than controlling weight to a treating physician's opinion: "(1) the frequen[c]y, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013); *Halloran*, 362 F.3d at 32 (same); 20 C.F.R. § 404.1527(c)(2). The ALJ further must explain the weight assigned to the opinion of a treating physician. Failure to provide "good reasons" for not assigning the proper weight of a treating physician is grounds for remand. *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015); *see also Halloran*, 362 F.3d at 32 ("We do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion and we will continue remanding when we encounter opinions from ALJs that do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion.").

In order for the Court to determine whether a treating physician's opinion is consistent with other substantial evidence in the administrative record, the Court must keep in mind that "genuine conflicts in the medical evidence are for the ALJ to resolve." *Gunter v. Comm'r of Soc. Sec.*, 361 F. App'x 197, 199 (2d Cir. 2010) (quoting *Burgess*, 537 F.3d at 128); *see also Garcia v. Barnhart*, No. 01-cv-8300, 2003 WL 68040, at *7 (S.D.N.Y. Jan. 7, 2003) (holding that the ALJ cannot substitute his or her "own assessment of the relative merits of the objective evidence and subjective complaints for that of a treating physician").

In this case, the ALJ assigned "some weight" to the opinion of the Plaintiff's treating physician, Christopher Frendo, D.O. ("Dr. Frendo"), and "great weight" to Andrea Pollack, D.O. ("Dr. Pollack"), who performed a consultative orthopedic examination of the Plaintiff.

   a. *As to Dr. Frendo's Opinion.*

Dr. Frendo diagnosed the Plaintiff with post laminectomy syndrome and degenerative disc disease of the lumbar spine. His positive clinical findings include: limited range of motion of the lumbar spine, tenderness of the paraspinal musculature, intermittent muscle spasms in the lumbar spine, sensory loss at L5 on the left, muscle weakness at the left ankle dorsiflexors, trigger points at the lumbar paraspinal muscles, and positive straight leg raises to 40 to 50 degrees on the left. Based on these findings, Dr. Frendo opined that the Plaintiff could sit for a total of four hours and stand for four hours in an eight-hour workday; must frequently get up to move around for 10 to 20 minutes before sitting again; could lift and carry 20 pounds occasionally, and no more than five pounds frequently; and could not perform any pushing, pulling, kneeling, bending, or stooping. In addition, Dr. Frendo testified that the Plaintiff needed unscheduled breaks; would require frequent absences; and would require symptomatic treatment for flare-ups, with possible intermittent narcotic pain medication, physical therapy, and home exercises. The ALJ only gave Dr. Frendo's opinion "some weight" because the Plaintiff's daily activities demonstrated he was not as limited as described and the medical evidence in the file supported an ability to do work at a sedentary exertional level, with some restrictions.

The Plaintiff objects that the ALJ should have deferred to Dr. Frendo's opinion in light of his relationship with the Plaintiff and specialization. The Plaintiff also claims that the record adequately supported Dr. Frendo's opinion, as "Dr. Frendo completed a Lumbar Spine Impairment Questionnaire very thoroughly in which his opinions as to Mr. Grogan's limitations are heavily

9

supported by reference to x-rays, surgeries and medication lists" and his treatment notes "reveal additional images and positive test results." ECF 9 at 10.

The Court finds that the ALJ assigned appropriate weight to Dr. Frendo's opinion. The ALJ favorably took into account the information cited by the Plaintiff and gave Dr. Frendo's opinion "some weight." The ALJ further concurred with the portions of Dr. Frendo's assessment that comported with the record in finding that the Plaintiff "has a serious back problem, which prevents him from doing his prior work." R. at 14. The ALJ only departed from Dr. Frendo's opinion where it was inconsistent with the other medical evidence in the record and the Plaintiff's daily activities. Specifically, the record did not reflect the frequency of flare-ups that Dr. Frendo asserted would likely occur, nor did the record indicate that Plaintiff was unable to do any pushing, pulling, kneeling, bending, or stooping. As for the Plaintiff's daily activities, the Plaintiff reported that he cooked and did laundry once a week; could shower and dress himself; occasionally provided childcare for his children; drove several times a week to the store and to his children's soccer games; had taken several family vacations in the two years preceding the hearing; and did not take pain medications regularly. So while the record supported some of Dr. Frendo's opinion, it did not corroborate the full extent of the limitations he proffered.

As part of her authority to weigh competing medical evidence, the ALJ may accept some but not all of a treating source's medical opinion. *See Barry v. Colvin*, 606 F. App'x 621, 624 (2d Cir. 2015) (summary order) (an ALJ is not bound to include in the RFC finding every specific imitation assessed by a consultative examiner, and could, instead, exercise discretion in reviewing the record evidence in its totality); *Pellam v. Astrue*, 508 F. App'x 87, 90 (2d Cir. 2013) (consultative examiner's opinion largely supported the ALJ's RFC determination even if ALJ did not credit all of the consultant's findings); *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002)

10

(an ALJ has discretion to accept or reject various portions of a treating physician's opinion, based upon substantial evidence in the record). Accordingly, the ALJ did not err by only adopting the portions of Dr. Frendo's opinion consistent with the record as a whole.

Therefore, the Court finds that the ALJ assigned the proper amount of weight to Dr. Frendo's opinion.

### b. As to Dr. Pollack's Opinion.

Dr. Pollack opined that Plaintiff had: mild restrictions in pushing and pulling, climbing stairs, kneeling, and reaching: mild to moderate restrictions in squatting, walking, standing, and sitting: and moderate to marked restrictions in bending, lifting, and carrying. The ALJ gave this opinion great weight because it was consistent with Dr. Pollack's physical examination findings as well as the other medical evidence. The Plaintiff objects that, as a consultative examiner who saw him only once, Dr. Pollack's determinations should receive less weight than Dr. Frendo. Further, the Plaintiff contends that Dr. Pollack's opinions were unsupported by the record and internally inconsistent.

Although the Plaintiff is correct that "ALJs should not rely heavily on the findings of consultative physicians after a single examination," *Selian*, 708 F.3d at 419, there is no *per se* rule requiring the ALJ to inexorably defer to the opinions of treating sources over those of consultative examiners under all circumstances. For instance, where the opinions of treating sources are unsupported by the record and contradicted by other medical evidence, it is entirely proper to elevate a consultative examiner's opinion over the flawed opinions of treating sources. *See Diaz v. Shalala*, 59 F.3d 307, 313 n.5 (2d Cir. 1995) ("[T]he opinions of non-examining sources [can] override treating source's opinions provided they are supported by evidence in the record."); *Donaldson v. Berryhill*, No. 17-cv-2000, 2018 WL 4845740, at *8 (E.D.N.Y. Oct. 4, 2018) ("If

the consultative examiner's opinion is more consistent with the medical evidence than a treating physician's opinion, the ALJ may accord the consultative examiner's opinion greater weight.").

Here, the ALJ correctly found that the record supported Dr. Pollack's findings, rather than the overly restrictive limitations in Dr. Frendo's opinion. Dr. Pollack's examination indicated that the Plaintiff had a reduced range of motion in his lumbar spine, but he could walk on his heels and toes, squat halfway down, and rise from his chair without difficulty. Plaintiff was also able to get on and off the examination table without help and needed no assistive devices. There was no spasm or trigger points and straight leg raising was negative bilaterally. Muscle strength in the lower extremities was 5/5 (full) and no muscle atrophy was noted. And as discussed above, these observations were consistent with much of the Plaintiff's daily activities, which required him to perform many of the postural activities Dr. Frendo alleged he could not do.

Therefore, the Court finds that the ALJ assigned the proper amount of weight to Dr. Pollack's opinion.

**2. As to the ALJ's Assessment of the Plaintiff's Credibility.**

The Plaintiff argues that the ALJ failed to properly evaluate his credibility. The Court disagrees. To evaluate a claimant's credibility:

> [t]he regulations set forth a two-step process to evaluate a claimant's testimony regarding his symptoms. First, the ALJ must consider whether the claimant has a medically determinable impairment which could reasonably be expected to produce the pain or symptoms alleged by the claimant. Second, if the ALJ determines that the claimant is impaired, he then must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms. If the claimant's statements about his symptoms are not substantiated by objective medical evidence, the ALJ must make a finding as to the claimant's credibility. Such an evaluation of a claimant's credibility is entitled to great deference if it is supported by substantial evidence. In assessing the claimant's credibility, the ALJ must consider all of the evidence in the record and give specific reasons for the weight accorded to the claimant's testimony. The regulations require the ALJ to consider not only the objective medical evidence, but also:
>
> 1. The individual's daily activities;

2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;

3. Factors that precipitate and aggravate the symptoms;

4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms ...; and

7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

*Matejka v. Barnhart*, 386 F. Supp. 2d 198, 205–06 (W.D.N.Y. 2005) (quoting *Murphy v. Barnhart*, No. 00-cv-9621, 2003 WL 470572, at *10–11 (S.D.N.Y. Jan. 21, 2003) (citing 20 C.F.R. § 404.1529(c))); *see also Wright v. Astrue*, No. 06-cv-6014, 2008 WL 620733, at *3 (E.D.N.Y. Mar. 5, 2008) (listing the same seven factors); *Knapp v. Apfel*, 11 F. Supp. 2d 235, 238 (N.D.N.Y. 1998) ("[A] finding that the Commissioner has failed to specify the basis for his conclusions is [a] compelling cause for remand.").

The Plaintiff alleged disability due to back issues. He stated he had flare ups after surgery and now has consistent pain which is tolerable but increases with activity. He said rest makes his pain better and that he uses heat or a TENS unit, which also help the pain. He estimated that he can only sit 20 minutes, stand 15 minutes, walk 15 minutes to an hour, and lift up to 20 pounds. The ALJ found that the Plaintiff's medically determinable impairment could reasonably be expected to cause his alleged symptoms, but that his statements concerning the intensity, persistence and limiting effects of those symptoms were "not entirely credible." The Plaintiff objects that the ALJ erred in her assessment of his credibility in a number of ways

13

First, the Plaintiff claims the ALJ lacked evidence contradicting the Plaintiff's testimony that he could not bend, push, pull, kneel, stoop, or sit for six hours in an eight-hour work day. However, as explained above, the ALJ considered a range of objective medical evidence, as well as the Plaintiff's daily activities, which contradicted his claim of total disability. *See Fooks v. Berryhill*, 284 F. Supp. 3d 305, 333 (E.D.N.Y. 2018) (affirming the ALJ's credibility analysis when "objective medical evidence did not corroborate plaintiff's testimony" and "plaintiff had described daily activities that, at times, were not limited to the extent one would expect given the complaints of disabling symptoms and limitations."); *Gallagher v. Colvin*, 243 F. Supp. 3d 299, 307 (E.D.N.Y. 2017) (finding ALJ's credibility determination "reasonable" when the "medical evidence presented" and evidence of daily activities showed that his symptoms did not "greatly limit his activities").

Second, the Plaintiff claims that his credibility should have been deemed substantially credible due to his good work record. "Although it is true that a good work history may be deemed probative of credibility, it remains just one of many factors appropriately considered in assessing credibility," and is not determinative where, as here, other elements of the record weigh against a "positive credibility findings." *Campbell v. Astrue*, 465 F. App'x 4, 7 (2d Cir. 2012) (upholding ALJ's credibility determination where plaintiff's complaints were inconsistent with the medical evidence). The ALJ thus did not err by declining to rely on the Plaintiff's good work history, because the other factors discussed above weighed against a positive credibility finding. *See, e.g., Wavercak v. Astrue*, 420 Fed.Appx. 91, 94 (2d Cir.2011) (unpublished summary order) ("That Wavercak's good work history was not specifically referenced in the ALJ's decision does not undermine the credibility assessment, given the substantial evidence supporting the ALJ's determination."); *Gallagher*, 243 F. Supp. 3d at 307 ("Given these inconsistencies, as well as the

medical evidence presented, the ALJ's determination regarding Plaintiff's credibility was reasonable, despite Plaintiff's long work history.").

Third, the Plaintiff asserts that the ALJ mischaracterized his testimony. The ALJ described the Plaintiff's testimony about his symptoms as "consistent pain which is tolerable, but increases with activity" and that "rest makes his pain better." R. at 12. According to the Plaintiff, a more accurate recounting of his testimony would have included the qualifying statement that:

> any increase in activity that I do comes at a cost where the pain increases where I would have to be in bed. I can not consistently do things, day in and day out, on a consistent basis. So to be able to work on a consistent basis, I would have to be in bed. I wouldn't be able to do it.

ECF 9 at 13. The omission cited by the Plaintiff is immaterial. The ALJ duly noted that the Plaintiff testified he required long-term bed rest after any increase in activity. *See* R. at 13 ("[A]ctivity causes flare-ups, which are disabling for several weeks at a time."). Considering that the ALJ ultimately found the Plaintiff's testimony about his flare-ups not fully credible, she was not required to restate the entirety of his testimony before reducing the weight assigned to it.

Fourth, the Plaintiff objects that the ALJ over-relied on evidence regarding his daily activities, arguing that "a claimant's ability to engage in minimal activities of daily living is not evidence of an ability to work and cannot be construed as such." ECF 8 at 15 (citing *Hamlin v. Barnhart*, 365 F.3d 1208, 13 (10th Cir. 2004)). But the ALJ did not merely rely on the fact of the Plaintiff's daily life. She instead focused on activities pertinent to the Plaintiff's ability to perform sedentary work, such as cooking, doing laundry, showering, dressing, driving, and shopping. The ALJ was permitted to consider these and Plaintiff's other noted daily activities as evidence of his abilities. 20 C.F.R. § 404.1529(c); Social Security Ruling (SSR) 96-7p.

Finally, the Plaintiff claims that the ALJ erred by noting that he "does not take medications on a regular basis" by omitting his testimony that the reason he did not need more frequent

medication was that he avoided activities likely to cause him pain. However, the regulations explicitly contemplate that the ALJ will consider treatment and pain relief measures in the course of the credibility analysis. 20 C.F.R. § 404.1529(c); SSR 96-7p. The fact that medication alleviates the Plaintiff's pain and the frequency with which he takes that medication are relevant considerations and the ALJ appropriately took them into account when evaluating the Plaintiff's testimony about his symptoms. *See Mejia v. Barnhart*, 261 F. Supp. 2d 142, 146 (E.D.N.Y. 2003) ("The ALJ properly considered evidence in the record that plaintiff's pain was adequately controlled by medication."); *Connard v. Barnhart*, No. 99-cv-8006, 2002 WL 1821640, at *5–6 (E.D.N.Y. Aug. 8, 2002) ("Infrequent treatment, prescriptions for muscle relaxants and Advil, and no continuous need for medication did not evidence an impairment that would likely produce such pain.").

Therefore, the Court finds that the ALJ assigned proper weight to the Plaintiff's testimony.

**3. As to the ALJ's Step Five Analysis.**

In making her determination under step five, the Commissioner must use her prior RFC finding in conjunction with the claimant's "vocational factors" (i.e., age, education, and work experience) to determine whether the claimant can transition to another job that is prevalent in the national economy. 20 C.F.R. §§ 404.1520(g)(1), 404.1560(c)(1). The Commissioner has a limited burden under step five to provide "evidence that demonstrates that other work exists in significant numbers in the national economy that" the claimant can do in light of his RFC and vocational factors. 20 C.F.R. § 404.1560(c)(2). If the claimant cannot transition to another job prevalent in the national economy, the Commissioner must find the claimant disabled. See 20 C.F.R. § 404.1520(g)(1).

Based on the testimony of a vocational expert, the ALJ determined that the Plaintiff could perform the following jobs that exist in substantial numbers in the national economy: appointment clerk, document preparer, and order clerk. On the surface, the Plaintiff argues that substantial evidence does not support this determination. In reality, however, the Plaintiff's claim is that the ALJ failed to assess his RFC in sufficient detail. Specifically, the Plaintiff faults the ALJ for not providing a function-by-function assessment of his exertional capacity.

The ALJ did not err. Throughout her opinion, the ALJ specifically noted the Plaintiff's pain and mobility limitations and accounted for them in an RFC containing several significant restrictions. To the extent the Plaintiff is claiming that the record does not support the ALJ's conclusion, the Court reminds the Plaintiff that the standard of review does not permit this sort of second guessing. *See Alston*, 904 F.2d at 126 ("Where there is substantial evidence to support either position, the determination is one to be made by the factfinder."); *Hererra v. Colvin*, No. 14-cv-7802, 2016 WL 1298990, *7 (S.D.N.Y. Mar. 31, 2016) (the court noted that while a fact-finder could have credited one doctor's opinion above another's, the standard of review does not permit the court to engage in "this sort of second-guessing").

Absent an error of law, such as a violation of the treating physician rule, for example, the determinations of the ALJ must stand unless the conflicting evidence is so substantial that no reasonable factfinder could rule otherwise. *See Brault*, 683 F.3d at 448; *McIntyre*, 758 F.3d at 149 ("If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld."); *Bonet*, 523 F. App'x at 59 ("[W]hether there is substantial evidence supporting the appellant's view is not the question here; rather, we must decide whether substantial evidence supports *the ALJ's decision*."). In the Court's view, the evidence supporting the ALJ's RFC determination is not so scant that it fails under the deferential standard of review.

Therefore, the Court finds that the ALJ conducted the proper analysis at step five.

### III. CONCLUSION

For the reasons stated above, the Plaintiff's motion for judgment on the pleadings pursuant to Rule 12(c) is denied in its entirety, and the Defendant's motion for judgment on the pleadings dismissing the Complaint is granted in its entirety.

The Clerk of the Court is respectfully directed to close this case.

It is **SO ORDERED**:

Dated: Central Islip, New York

May 3, 2019

    /s/ Arthur D. Spatt

ARTHUR D. SPATT

United States District Judge